```
    FILED        ___ LODGED
___ RECEIVED    ___ COPY

     APR 1 6 2019

 CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
 BY_____ M DEPUTY
```

**SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>1. David Mirrion Loflin (all counts),<br>2. Heriberto O. Cruz (all counts), and<br>3. Benjamin Lloyd Bunker (all counts),<br><br>　　　　　Defendants. | CR-19-00411-PHX-DJH (DMF)<br><br>**INDICTMENT**<br><br>VIO: Conspiracy, 18 U.S.C. § 371<br>(Count 1)<br><br>Securities Fraud, 15 U.S.C. 78j(b)<br>& 17 C.F.R. § 240-10b-5<br>(Counts 2-17)<br><br>Wire Fraud, 18 U.S.C. § 1343<br>(Counts 18-34)<br><br>Transactional Money Laundering,<br>18 U.S.C. § 1957<br>(Counts 35-40)<br><br>Concealment Money Laundering,<br>18 U.S.C. § 1956(a)(1)(B)(i)<br>(Counts 41-52)<br><br>Aid and Abet, 18 U.S.C. § 2<br>(Counts 2-52)<br><br>Forfeiture Allegations,<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(1)<br>28 U.S.C. § 2461(c) |
|---|---|

THE GRAND JURY CHARGES:

At all times material to this indictment, within the District of Arizona and elsewhere:

**INTRODUCTION**

1.　　Between approximately October of 2014 and May of 2017, Defendants

DAVID MIRRION LOFLIN, HERIBERTO O. CRUZ, and BENJAMIN LLOYD BUNKER, with the assistance of unindicted co-conspirator J.K. and others, engaged in a debt conversion securities fraud scheme to convert the debt of Greenway Design Group, Inc. ("GDGI") into unrestricted stock, promote the stock in various ways, and then sell the stock for an inflated profit. Through a series of materially false statements and omissions, Defendants converted nearly 2 billion shares of GDGI stock, for a profit of hundreds of thousands of dollars.

**Individuals and Entities Involved**

2. J.K. resided in Scottsdale, Arizona, and was previously a registered securities broker. J.K. was affiliated with, among other entities:

- Colins Capital, LLC (Colins Capital) registered in Wyoming, with J.K. as its organizer and registered agent; and
- Par Point Capital, LLC (ParPoint), registered in Wyoming.

3. DAVID MIRRION LOFLIN resided in Baton Rouge, Louisiana, and had experience with the administrative and technical requirements for debt conversion and selling over-the-counter ("OTC") stock.

4. HERIBERTO O. CRUZ resided in Chino Hills, California, and provided marketing services related to microcap stock companies. CRUZ is affiliated with, among other entities:

- Cruz Capital Advisors, Inc. ("CCAI"), registered in Nevada, with CRUZ as its sole officer; and
- RioRoca Holdings, LLC (RioRoca), registered in Wyoming with CRUZ as organizer, and rendered inactive and administratively dissolved on December 9, 2017.

5. BENJAMIN LLOYD BUNKER resided in or near Las Vegas, Nevada. He is an attorney practicing as The Bunker Law Group, PLLC. During the relevant time, he provided most of the attorney letters and other legal paperwork necessary for J.K. and

LOFLIN to convert the debt of GDGI into stock.

6. B.L. resided in Huntington Beach, California. He was the majority shareholder of GDGI until October 14, 2014, when he sold those shares to RioRoca, understanding that RioRoca was acting as a nominee for J.K. After the sale, B.L. agreed to act as GDGI's CEO and did so until October of 2015.

7. T.G. resided in Phoenix, Arizona and is a long-time friend of J.K. In October of 2015, at the request of J.K., he agreed to act as CEO of GDGI, under the direction of J.K.

8. GDGI was incorporated in Delaware and had stock that was publicly traded in the over-the-counter (OTC) market. GDGI was at all relevant times controlled by J.K. GDGI's corporate filing history on the OTC market, via OTC Market Group, Inc. (OTCMGI), is as follows:

    a. December 31, 2013 annual filing, submitted October 9, 2014: B.L. was listed as President, CEO, Director and beneficial owner of GDGI, with a salary of $10,000 per month; and BUNKER was listed as counsel for GDGI.

    b. December 31, 2014 annual filing, submitted April 6, 2015: B.L. was listed as President, CEO, director and beneficial owner, with a salary of $3,000 per month; Rio Roca was listed as a beneficial owner, owning the largest percentage of stock; and BUNKER was listed as counsel for GDGI.

    c. December 31, 2015 annual filing, submitted April 30, 2016: T.G. was listed as President, CEO, director and beneficial owner, with no specified monthly salary; and BUNKER was listed as counsel for GDGI.

    d. December 31, 2016 annual filing, submitted March 15, 2017: T.G. was listed at President, CEO, director and beneficial owner, with no specified monthly salary; and BUNKER was listed as counsel for GDGI.

## COUNT 1
## Conspiracy
## (18 U.S.C. § 371)

The factual allegations in paragraphs 1 through 8 are incorporated by reference.

9. Beginning at least as early as on or about October of 2014, and continuing to at least on or about May of 2017, Defendants DAVID MIRRION LOFLIN, HERIBERTO O. CRUZ, and BENJAMIN LLOYD BUNKER, individually and doing business under the entities described above, along with unindicted co-conspirator J.K. and other individuals and entities known and unknown to the Grand Jury, knowingly and willfully agreed and conspired with each other and with others to commit the following offenses against the United States: securities fraud, in violation of 15 U.S.C. § 78j(b); wire fraud, in violation of 18 U.S.C. § 1343; transactional money laundering, in violation of 18 U.S.C. § 1957; and concealment money laundering, in violation of 18 U.S.C. § 1956 (a)(1)(B)(i).

**Manner and Means of the Conspiracy and Scheme to Defraud**

10. During the relevant time period, Defendants looked for host companies that were registered to sell microcap stock OTC, were current on all required regulatory filings, and had debt on their books. Microcap stocks are sometimes referred to as "penny stocks" and are low-priced stocks issued by small companies and typically traded on the OTC marketplace rather than a national stock exchange. In this instance, the company selected was GDGI, and the controlling interest in GDGI was owned by B.L.

    a. At the time of Defendants' selection of GDGI in 2014, GDGI had worthless stock, no assets, a negative bank balance, and all business activity had ceased. GDGI was at one point a company that engaged in real business, to wit: marketing a heating-cooling technology, and GDGI received outside investments in that technology, including from D.S. in 2009.

    b. On October 14, 2014, J.K. purchased the controlling interest of GDGI from B.L., and he did so through RioRoca (CRUZ) to conceal his ownership and control of GDGI. B.L. remained the nominal CEO of GDGI, with J.K. exercising

- 4 -

control over any important decisions affecting GDGI.

  c. On January 6, 2016, J.K. arranged for T.G. to assume the role of CEO, again with J.K. exercising control over any important decision affecting GDGI. Specifically, J.K. arranged for CRUZ and T.G. to execute a stock purchase agreement to transfer the controlling shares of stock from RioRoca to T.G.

11. Defendants used GDGI to create debt purportedly owed to J.K., LOFLIN, or others, in the form of a promissory note with a debt conversion provision. This conversion provision allowed the debt to be converted into shares of stock.

12. Defendants, specifically through BUNKER, made materially false statements to attorneys, stock transfer agents, regulatory agencies, and other individuals and entities to convert the debt into shares of stock with "unrestricted" status that could be sold OTC without being registered with the SEC.

13. Defendants, specifically through CRUZ, affirmatively marketed the stock to bolster its sales price.

14. Defendants, specifically through J.K. and LOFLIN, ultimately sold the unrestricted shares of unregistered stock for a profit, dividing the proceeds in various ways.

### Overt Acts of the Conspiracy and Scheme to Defraud

15. Among many other acts, unindicted co-conspirator J.K. specifically engaged in the following overt acts:

  a. J.K. contacted GDGI's controlling owner, B.L., and arranged for the purchase of GDGI. J.K. concealed the purchase through CRUZ and RioRoca, on or near October 14, 2014.

  b. Shortly thereafter, sometime in late 2014, J.K. directed B.L. to substitute a false promissory note for an existing, legitimate promissory note that was issued by GDGI for a debt owed to D.S., dated April 1, 2009. The substitute false promissory note added a debt conversion feature and was backdated to November 16, 2011.

  c. In late 2015, after a falling out with B.L., J.K. arranged for T.G., to

assume the role of nominal CEO of GDGI.

16. Among many other acts, LOFLIN specifically engaged in the following acts:

 a. On or about February 18, 2015, LOFLIN prepared a "Debt Purchase and Assignment Agreement" that was executed by LOFLIN (as purchaser), D.S. (the original creditor), and B.L. (as CEO of GDGI) so that LOFLIN could fraudulently convert the debt into stock to sell at a profit.

 b. On or about February 18, 2015, LOFLIN and J.K. each prepared and signed a "Seller's Declaration under Rule 144" containing materially false statements, including: "The undersigned is not an affiliate of the Company and has not been such an affiliate for at least the three-month period immediately preceding the date hereof."

 c. On or about December 1, 2016, LOFLIN prepared a Debt Purchase and Assignment Agreement, which was executed by J.K. (as the purchaser), LOFLIN (as the original creditor), and T.G. (as the nominal CEO of GDGI), so J.K. could fraudulently convert the debt into stock.

17. Among many others acts, CRUZ specifically engaged in the following acts:

 a. On or about October 14, 2014, CRUZ entered into a purchase agreement with B.L. to purchase GDGI, through RioRoca, as a nominee for J.K.

 c. In May of 2015, CRUZ and others promoted GDGI stock in the publications "0007 Stock Chat," "Stock Hideout," "Stock Roach," and "Stock Situation Room," and between May 14, 2015, and June 29, 2015, J.K. and LOFLIN each sold 68 million shares of GDGI stock.

 d. In September of 2015, CRUZ and others promoted GDGI stock in the publication "MicroCapProfiler," and that same month, J.K. and LOFLIN each subsequently sold 68 million shares of GDGI stock.

 e. In October of 2015, CRUZ and others promoted GDGI stock in five different publications similar to those above, and in November and December of 2015, J.K. and LOFLIN sold 85.2 million and 20 million shares of GDGI stock, respectively.

18. Among many others acts, BUNKER specifically engaged in the following acts:

   a. On or about October 13, 2014, BUNKER signed an attorney letter as part of GDGI's annual reporting obligation to OTCMGI; and the letter contained materially false statements, including: "In rendering this letter Counsel has personally met with management and with all of the Directors of the Company, has reviewed the Statement published by the company and personally discussed the Statement with management and all of the Directors of the Company."

   b. On or about March 15, 2017, BUNKER signed an attorney letter as part of GDGI's annual reporting obligation to OTCMGI; and the letter contained materially false statements, including: "In rendering this letter Counsel has personally met with management and with all of the Directors of the Company, has reviewed the Statement published by the company and personally discussed the Statement with management and all of the Directors of the Company."

   c. On or about March 9, 2015, BUNKER signed an attorney opinion letter to support a "Rule 144 exception" to SEC requirements for stock converted by J.K. and LOFLIN; and that letter contained material misstatements and omissions concerning the true nature of the stock conversion.

   d. On or about March 9, 2015, BUNKER signed an attorney opinion letter to support a "Rule 144 exception" to SEC requirements for stock converted by J.K. and LOFLIN; and that letter contained material misstatements and omissions concerning the true nature of the stock conversion.

19. The co-conspirators additionally engaged in the overt acts detailed in counts 2 through 52, and those acts are incorporated herein by reference.

This conduct was in violation of 18 U.S.C. § 371.

## Counts 2 – 17
## Securities Fraud
## (15 U.S.C. § 78j(b) & 17 C.F.R. § 240-10b-5)

The factual allegations in paragraphs 1 through 19 are incorporated by reference as though set forth fully herein.

20. Between on or about October of 2014 and May of 2017, Defendants DAVID MIRRION LOFLIN, HERIBERTO O. CRUZ, and BENJAMIN LLOYD BUNKER, individually and doing business under the entities described above, along with unindicted co-conspirator J.K. and other individuals and entities known and unknown to the Grand Jury, engaged in the following: acting in connection with the purchase or sale of a security, and acting knowingly, willfully and with the intent to defraud, employed a device, scheme or artifice to defraud, made untrue statements about or omitted a statement of material fact, and engaged in a practice that operated as a fraud, and in doing so made use of or caused the use of any means or instrumentality of interstate commerce, use of the mails, or use of a national securities exchange.

21. With each instance being a separate count of the indictment, Defendants misstated the nature of the relationships that J.K., LOFLIN, CRUZ, and BUNKER had with GDGI to obtain, among other things, unrestricted shares of stock for public sale that were not registered with the SEC, as follows:

| Count | Entity/Person Rec'vg. Cert. | Date of Rule 144 Decl. | Date of Atty. Letter | Date Cert. Issued | Certificate (# of shares) |
|---|---|---|---|---|---|
| 2 | Colins Capital | 10/20/14 | 10/28/14 | 11/6/14 | 8568 (30M) |
|   | Colins Capital | 10/20/14 | 10/28/14 | 11/6/14 | 8568 (10M) |
| 3 | Colins Capital | 2/18/15 | 3/9/15 | 3/12/15 | 8581 (35M) |
|   | Colins Capital | 2/18/15 | 3/9/15 | 3/12/15 | 8581 (33M) |
| 4 | David Loflin | 2/18/15 | 3/9/15 | 3/12/15 | 8580 (35M) |
|   |   | 2/18/15 | 3/9/15 | 3/12/15 | 8580 (33M) |
| 5 | Colins Capital | 8/5/15 | 8/6/15 | 8/7/15 | 8589 (68M) |
| 6 | David Loflin | 8/5/15 | 8/6/15 | 8/7/15 | 8588 (68M) |

| 7 | Colins Capital<br>Colins Capital | 9/30/15<br>9/30/15 | 9/30/15<br>9/30/15 | 10/6/16 | 8591 (74M)<br>8591 (16M) |
| --- | --- | --- | --- | --- | --- |
| 8 | David Loflin | 9/30/15 | 10/2/15 | 10/6/15 | 8592 (20M) |
| 9 | Colins Capital | 12/10/15 | 2/24/16 | 1/7/16 | 8598 (90M) |
| 10 | David Loflin | 6/3/16 | 6/4/16 | 6/21/16 | 8600 (82.3M) |
| 11 | Colins Capital | 7/12/16 | 7/13/16 | 8/4/16 | 8604 (110M) |
| 12 | David Loflin | 8/10/16 | 9/30/16 | 8/12/16 | 8606 (120M) |
| 13 | David Loflin | 10/26/16 | 11/2/16 | 10/31/16 | 8613 (160M) |
| 14 | Colins Capital | 11/1/16 | 11/1/16 | 11/2/16 | 8614 (160M) |
| 15 | David Loflin | 11/16/16 | 11/22/16 | 11/18/16 | 8616 (200M) |
| 16 | Colins Capital | 12/1/16 | 12/1/16 | 12/2/16 | 8618 (200M) |
| 17 | David Loflin | 5/8/17 | 5/12/17 | 5/11/17 | 8626 (205M) |

This conduct was in violation of 15 U.S.C. § 78j(b) & 17 C.F.R. § 240-10b-5, and 18 U.S.C § 2.

### Counts 18-34
### Wire Fraud
### (18 U.S.C. § 1343)

The factual allegations in paragraphs 1 through 21 are incorporated by reference.

22. Between on or about November of 2014 and May of 2017, Defendants DAVID MIRRION LOFLIN, HERIBERTO O. CRUZ, and BENJAMIN LLOYD BUNKER, individually and doing business under the entities described above, and along with unindicted co-conspirator J.K. and other individuals and entities known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme or artifice to defraud and to obtain money and property from others by means of material false and fraudulent pretenses and representations and by the concealment and omission of

- 9 -

material facts.

23. On or about the dates below, for the purpose of executing and attempting to execute the scheme, Defendants knowingly transmitted and caused to be transmitted, by means of wire and radio communications in interstate commerce, certain writings, pictures, signals and sounds, to and from the District of Arizona and elsewhere, with each instance set forth below being a separate count of the indictment:

| Count | Certificate | Sales of Shares: Date/Number | Deposit of Proceeds: Date/Amount | Brokerage Acct. of Deposit |
|---|---|---|---|---|
| 18 | 8568 & 8578 | 12/4/14 – 2/11/15: 80M | 12/9/14 – 2/17/15: $56,524 | *****6736 |
| 19 | 8577 | 1/30/15 – 2/27/15: 50M | 2/4/15 – 2/17/15: $19,984 | *****2004 |
| 20 | 8581 | 5/14/15 – 6/29/15: 68M | 5/19/15 – 7/2/15: $29,829 | *****6736 |
| 21 | 8580 | 5/14/15 – 6/29/15: 68M | 5/19/15 – 7/2/15: $29,755 | *****2004 |
| 22 | 8589 | 9/17/15 – 9/18/15: 68M | 9/22/15 – 9/23/15: $12,487 | *****6736 |
| 23 | 8588 | 9/17/15 – 9/18/15: 68M | 9/22/25 – 9/23/15: $12,456 | *****2004 |
| 24 | 8591 | 11/17/15 – 1/15/16: 90M | 11/20/15 – 1/21/16: $8,058 | *****6736 |
| 25 | 8592 | 11/2/15: 20M | 11/5/15: $3,633 | *****2004 |
| 26 | 8598 | 3/26/16 – 7/7/16: 90M | 3/31/16 – 7/12/16: $8,229 | *****6736 |
| 27 | 8600 | 7/13/16 – 8/9/16: 110M | 7/18/16 – 8/11/16: $9,858 | *****2004 |
| 28 | 8604 | 10/17/16 – 11/1/16: 110M | 10/20/16 – 11/4/16: $9,938 | *****6736 |
| 29 | 8606 | 10/17/16–10/25/16: 120M | 10/20/16 – 10/28/16: $10/806 | *****2004 |
| 30 | 8614 | 11/28/16–11/29/16: 160M | 12/1/16 – 12/2/16: $14,637 | *****9898 |
| 31 | 8613 | 11/11/16–1/14/16: 160M | 11/16-16 – 11/17/16: $14,559 | *****2004 |
| 32 | 8616 | 12/6/16 – 11/1/17: 200M | 12/9/16 – 1/17/17: $17,954 | *****2004 |

| 33 | 8618 | 12/12/16 – 11/1/17: 153.2M | 12/15/16 – 1/17/17: $13,229 | *****9898 |
| 34 | 8621 | 3/29/16 – 5/2/17: 230M | 4/3/17 – 5/5/17: $39,516 | *****2004 |

This conduct was in violation of 18 U.S.C. §§ 1343 and 2.

**Counts 35-40**
**Transactional Money Laundering**
**(18 U.S.C. § 1957)**

The factual allegations in paragraphs 1 through 23 are incorporated by reference.

24.   On or about the dates listed below, with each instance being a separate count of the indictment, Defendants DAVID MIRRION LOFLIN, HERIBERTO O. CRUZ, and BENJAMIN LLOYD BUNKER, individually and doing business under the entities described above, along with unindicted co-conspirator J.K. and other individuals and entities known and unknown to the Grand Jury, knowingly engaged and attempted to engage in the following monetary transactions in the United States in criminally-derived property with a value exceeding $10,000, derived from specified unlawful activity, namely, the violation of 18 U.S.C. § 1343 (wire fraud) as alleged in counts 18 through 34, as follows:

| Count | Date | Brokerage Acct. No. | Bank Account No. | Amount |
|---|---|---|---|---|
| 35 | 9/24/14 | *****6736 | ******8491 | $150,956 |
| 36 | 12/30/14 | *****6736 | ******8491 | $77,868 |
| 37 | 3/26/15 | *****6736 | ******8491 | $117,087 |
| 38 | 5/14/15 | *****6736 | ******8491 | $81,361 |
| 39 | 6/12/15 | *****6736 | ******8491 | $22,821 |
| 40 | 3/15/16 | *****6736 | ******8491 | $16,352 |

This conduct was in violation of 18 U.S.C. §§ 1957 and 2.

**Counts 41-52**
**Concealment Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

The factual allegations in paragraphs 1 through 24 are incorporated by reference.

25. On or about the dates listed below, with each instance being a separate count of the indictment, Defendants DAVID MIRRION LOFLIN, HERIBERTO O. CRUZ, and BENJAMIN LLOYD BUNKER, individually and doing business under the entities described above, along with unindicted co-conspirator J.K. and other individuals and entities known and unknown to the Grand Jury, conducted and intended to conduct a financial transaction involving property that represented the proceeds of criminal activity (that is, wire fraud), knowing that the property in fact represented proceeds of criminal activity and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, source, ownership, and control of the proceeds of the fraud.

26. More specifically, Defendants orchestrated the purported purchase of GDGI from B.L., using the entity RioRoca, with the funds for the purchase provided by J.K. J.K. wired funds to CRUZ via CCAI, and CRUZ provided the funds to B.L. to use as payment, in the following instances:

| Count | Transfer from J.K. bank account to CCAI | Transfer from CCAI to B.L. |
|---|---|---|
| 41 | 12/2/14; $3,048 | 12/2/14; $2,812 |
| 42 | 1/22/15; $2,645 | 1/22/15; $2,475 |
| 43 | 2/4/15; $2,896 | 2/4/15; $2,812 |
| 44 | 3/3/15; $2,864 | 3/3/15; $2,812 |
| 45 | 3/20/15; $6,000 | 3/20/15; $5,701 |
| 46 | 5/20/15; $3,000 | 5/20/15; $2,812 |
| 47 | 8/4/15; $3,400 | 8/4/15; $2,812 |

| 48 | 10/2/15; $3,000 | 10/2/15; $2,812 |

27. Subsequently, J.K. arranged for T.G. to serve as CEO of GDGI. After that point, additional payments to B.L. for purchase funds were transferred from J.K.'s bank account, via PayPal, to T.G.; and T.G. sent the funds to B.L., as follows:

| Count | Transfer from J.K. Bank Acct. to T.G. PayPal Acct. | Transfer from T.G. PayPal Acct. to B.L. |
|---|---|---|
| 49 | 1/6/16; $3,500 | 1/6/16: $3,150 |
| 50 | 2/25/16; $1,500 | 2/25/16; $1,500 |
| 51 | 3/17/16; $2,250 | 3/17/16; $2,250 |
| 52 | 4/1/16; $2,250 | 4/1/16; $2,250 |

This conduct was in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## FORFEITURE ALLEGATIONS

The factual allegations in Paragraphs 1 through 27 are incorporated by reference.

28. Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461(c), upon conviction of one or more of the offenses alleged in counts 1 through 52 above, Defendants shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offenses, or in any property traceable to such property involved in such offenses, including the following: (a) all money or other property that was the subject of each transaction or transfer in violation of a statute listed in 18 U.S.C. § 982, (b) all other property constituting proceeds obtained as a result of those violations, and (c) all property used in any manner or part to commit or to facilitate the commission of those violations, including but not limited to the sum of money representing the amount of money involved in the offenses. This includes the following property:

   a. A sum of money equal to at least $311,451 in U.S. currency, representing the amount of money involved in the offenses. Defendants shall be jointly and severally liable for this amount.

29. If any of the above-described forfeitable property, as a result of any act or omission by any Defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, had been substantially diminished in value, or has been commingled with other property and cannot be divided without difficulty, it is the intent of the United States to seek forfeiture of any other property of that Defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461.

A TRUE BILL

s/
FOREPERSON OF THE GRAND JURY
Date:  April 16, 2019

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

s/
MONICA B. KLAPPER
GARY M. RESTAINO
Assistant U.S. Attorneys